IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES E. MAY, JR., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-5007 |
| | : | |
| GEORGE W. HILL CORRECTIONAL | : | |
| FACILITY, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

**GOLDBERG, J.**                                                                                               August 14, 2023

Currently before the Court is an Amended Complaint filed by Charles E. May, Jr. pursuant to 42 U.S.C. § 1983 against the George W. Hill Correctional Facility ("GWHCF") and four GWHCF employees – Defendants Jenkins, Gant, McDevitt, and Royales.[1] May complains about alleged unconstitutional conditions of confinement, improper placement in disciplinary housing, loss of legal mail and other property, and interference with phone access that he experienced at GWHCF between November 21, 2021 and January 2, 2022. (ECF No. 6.) May also alleges that Defendant Gant physically assaulted him. (*Id*. at 8-9.) For the following reasons, the Court will dismiss in part May's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). May's excessive force claim against Defendant Gant passes statutory screening and will proceed to service. May's remaining claims will be dismissed.

---

[1] May does not specify whether he seeks to pursue claims against the individual Defendants in their individual and/or official capacity. However, based on the allegations in the Amended Complaint, the Court understands May to be pursuing individual capacity claims only. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings.").

I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

May's initial Complaint focused on the conditions of his confinement at GWHCF between November 2021 and January 2022.  (ECF No. 2.)  He complained about sleeping without proper bedding in the "freezing cold," sharing a cell with a sick person, and being placed in disciplinary housing, *i.e.*, "in the hole."  (*Id*.)  May named the following as Defendants: (1) GWHCF; (2) Sgt. Gant;[2] (3) Sgt. Jenkins; and (4) Sgt. Royales.  With regard to the individually named Defendants, May alleged that Sgt. Jenkins "took [his] necessities and froze [his] phone account (without proper write-up)," that Sgt. McDevitt "took [his] legal mail/property and put [him] in the hole (without proper writeup)," and that Sgt. Royales "spoke to [him] several times about the conditions of [his] cellmate without response." (*Id*.).  May provided no details as to Sgt. Gant's involvement.

In a March 20, 2023 Opinion and Order, I granted May leave to proceed *in forma pauperis* and screened the Complaint pursuant to 28 U.S.C. §1915(e)(2)(B).  (ECF Nos. 4 & 5.)  I dismissed May's claims because May failed to provide sufficient details about the actions of any individual Defendant.[3]  *May v. George W. Hill Corr. Facility*, No. 22-CV-5007, 2023 WL 2574979, at *1 (E.D. Pa. Mar. 20, 2023).  In addition, I found that May did not adequately state a claim based on his conditions of confinement, disciplinary placement, lost mail and property, and his frozen phone account. *Id.*  I provided May an opportunity to file an Amended Complaint to cure the noted deficiencies.

---

[2]  In the March 20, 2023 Opinion, I referred to Defendant "Sgt. Grant" based on a reading of May's handwriting.  May's Amended Complaint clearly identifies this Defendant as "Sgt. Gant."  *See* Am. Compl. at 8-9.  I therefore refer to this Defendant – previously referred to as "Sgt. Grant" - as "Sgt. Gant" throughout this Opinion.

[3]  I also dismissed Defendant GWHCF because a correctional facility is not a "person" subject to liability under § 1983.  *May*, 2023 WL 2574979, at *2.

2

May returned with an Amended Complaint against the same Defendants with essentially the same claims.  *Compare* Compl., ECF No. 2 with Am. Compl., ECF No. 6.  The Amended Complaint does, however, include additional factual allegations against Defendant Gant.  Specifically, May claims that on two occasions, November 21 and December 2, 2021, Defendant Gant physically assaulted him.  (*Id*. at 8-9.)   May seeks monetary compensation for mental and physical injuries.  (*Id*. at 4.)

## II.     STANDARD OF REVIEW

Since May is proceeding *in forma pauperis*, his Amended Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss a pleading if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As May is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

May once again asserts constitutional claims against Defendants pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

**A.   Claim Based on Excessive Force**

May claims that he was physically assaulted while incarcerated at GWHCF in violation of the constitutional prohibition against use of excessive force. (Am. Compl. at 2, 7-9.) The Amended Complaint does not specify whether May was a pretrial detainee or a convicted sentenced inmate, which is relevant because the Eighth Amendment governs excessive force claims brought by convicted and sentenced prisoners, *see Hudson v. McMillian*, 503 U.S. 1, 8 (1992), while the Due Process Clause of the Fourteenth Amendment governs similar claims raised by pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson*, 503 U.S. at 8. When screening an Eighth Amendment excessive force claim under § 1915, the court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v.*

*Bueno*, No. 20-687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). To state a due process violation based on excessive force, a pretrial detainee must allege facts to plausibly suggest that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397.

In my March 20, 2023 Opinion, I noted that May made passing reference to an excessive force claim without providing any allegations about force being used on him by any Defendant. *May*, 2023 WL 2574979, at *1 n.2 May's Amended Complaint provides additional factual details. May alleges that Sgt. Gant physically assaulted him on two separate occasions, once on November 21, 2021 and again on December 2, 2021. (*Id*. at 7-9.) May claims that Sgt. Gant "physically grabbed" him on November 21, 2021 and lifted him back into his cell. (*Id*. at 7-8.) On December 2, 2021, May claims that Sgt. Gant threw him face first onto the ground and threatened to spray him with mace. (*Id*. at 9.) Taking May's allegations as true, as I am obligated to do at this early stage of the litigation, May has alleged a sufficient basis from which the Court could infer that Sgt. Gant used excessive force on May. Accordingly, May will be permitted to proceed on his excessive force claim against Sgt. Gant.

## B. Other Claims

All of May's other claims fail for the reasons set forth in my March 20, 2023 Opinion.

May again names GWHCF as a Defendant.  I already dismissed all § 1983 claims against GWHCF, explaining that "a correctional facility is not a 'person' subject to liability under § 1983." *May,* 2023 WL 2574979, at *2 n.3 (citations omitted).  All § 1983 claims against GWHCF are dismissed with prejudice.

In similar language to the initial Complaint, May again names Defendants Jenkins, McDevitt, and Royales without sufficiently describing how these named Defendants were personally involved in subjecting him to unconstitutional conditions of confinement.  May states that he slept without proper bedding for "weeks" in "freezing cold conditions," and was "housed with an affected inmate." (Am. Compl. at 3.)  While May provides some additional factual details in his Amended Complaint, (*id*. at 7-11), May still does not tie any of these allegations related to conditions of confinement to any specific named Defendant nor does May allege that the conditions existed due to Defendants' personal direction, actual knowledge, or acquiescence. *Rode*, 845 F.2d at 1207; *Dooley v. Wetzel*, 957 F.3d 366, 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Accordingly, the Amended Complaint fails to state a plausible claim against the individually named Defendants based on alleged unconstitutional conditions of confinement.

While May again attributes certain actions to Defendants Jenkins, McDevitt, and Royales, the Complaint contains little in the way of details or information about those Defendants' actions. May claims that "Sgt. Jenkins took [his] essentials and also froze [his] accounts, without write ups," that Sgt. McDevitt "took [his] legal mail and put [him] in the hole without proper write ups,"

and Sgt. Royales "spoke to [him] several times and still did not help with his request." (Am. Compl. at 3.) These allegations fail to provide the necessary details about the "who, what, when, where and why of [May's] claim[s]." *See Davis v. Internal Revenue Serv.*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citing *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at * 4 (D.N.J. Oct. 16, 2019)). Because May once again provides only vague and conclusory allegations, and has not identified any sufficiently detailed actions by any individual Defendant, his claims must be dismissed because they are not plausible as pled.

May's claims fail as pled for additional reasons as outlined in my previous Opinion. First, the Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs similar challenges raised by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted and sentenced prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.[4] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Bell v. Wolfish*, 441 U.S. 520, 538-39, 539 n.20 (1979)). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a

---

[4] As noted *supra,* the Amended Complaint does not specify whether May was a pretrial detainee or a convicted sentenced inmate. However, the same standard for considering May's conditions of confinement claim is applicable in either case. *See Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees.") (internal citations omitted).

serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App' x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837).

      May claims that he was denied bedding essentials for "weeks in freezing cold temperatures, (Am. Compl. at 4, 7-9), and forced to share a cell with an inmate suffering from "multiple health issues," (*id*. at 8-9.)  May also complains about being denied the opportunity to shower for two days in December of 2021.  (*Id*. at 9-10.)  Although the conditions described by May not be pleasant or desirable, May does not allege that any Defendant knew of and disregarded a serious risk to May's health or safety based on those conditions.  May claims that Sgt. Jenkins initially confiscated his bedding on November 21, 2021 but fails to allege sufficient facts from which one could plausibly infer that Jenkins was willfully blind to a serious risk to May's health or safety (or even knew about the alleged severity of the conditions he was kept in for weeks).  May fails to provide sufficient facts showing that Jenkins or any Defendant was on notice that May spent weeks in the freezing cold without sufficient bedding, nor does May provide sufficient facts that any Defendant knew about issues with a sick cellmate or a failure to allow showers for two-days.  For these reasons, May has not adequately stated a plausible conditions of confinement claim.

      In addition to a general conditions of confinement claim, May contends that he was disciplined, *i.e*., "spent time in the hole," without a proper write-ups. (Am. Compl. at 4.)  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen*., 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of*

*Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004). "When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (*per curiam*). If a protected liberty interest is alleged, the next question focuses on whether the prisoner was provided with the process due, which includes "a meaningful opportunity to respond and be heard." *Id*. at 140.

The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll*,

9

495 F.3d 62, 70 (3d Cir. 2007). "Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

May claims that he spent 15 days "in the hole" even though he was the victim of an attack by another inmate inside his cell (Am. Compl. at 10.) Even assuming 15 days in the segregation triggers a protected liberty interest, which it does not, *see e.g.*, *Robinson v. Norwood*, 535 F. App'x 81, 83 (3d Cir. 2013) (placement in administrative segregation for days or months at a time does not implicate a protected liberty interest), May does not allege any facts about process he was due but deprived prior to being placed in disciplinary segregation. To the contrary, May availed himself of the available process by presenting his version of events at a disciplinary hearing before a hearing officer. (*Id*.) Because May has not plausibly alleged a denial of process, his due process claims will be dismissed.[5] *See King v. Quigley*, No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (dismissing detainee's due process claims upon screening, where claims were based "solely on the basis that he believe[d] the misconducts issued against him were false" and detainee did not allege he was not provided applicable protections).

---

[5] May's due process claims also fail because he has not alleged any facts specifically tying such claims to a named individual Defendant. As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."). Aside from naming Defendants in the Complaint, May does not state how any of the named Defendants were personally involved in the alleged violation of his rights.

As in his Complaint, May claims that his legal mail and other property was "lost" or "taken," and that his phone account was "frozen." (Am. Compl. at 3, 8, 10-11.) To the extent that May also asserts a due process claim based on the loss of his legal mail and property, such a claim fails. A prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property because he has adequate post-deprivation remedies available to him. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *see also Shareef v. Moore*, 844 F. App'x 487, 488 (3d Cir. 2021) (*per curiam*) (finding no due process violation where inmate had access to adequate post-deprivation remedy to address confiscation and destruction of property and legal papers), *cert. denied*, 142 S. Ct. 146 (2021); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy to satisfy due process).

May's claim based on the denial of phone privileges similarly fails. He alleges that "Sgt. Jenkins froze my account and I couldn't receive money or make phone calls for three weeks," (Am. Compl. at 8.). To the extent May relies on the Eighth Amendment, his claim based on the deprivation of phone calls for a three-week period does not qualify as an Eighth Amendment violation. *See Castillo v. FBOP*, No. 05-5076, 2006 WL 1764400, at *6 (D.N.J. June 23, 2006) ("Indeed, telephone and visitation contacts do not qualify as minimal life's necessities, such as adequate food, clothing, shelter, sanitation, medical care and personal safety."); *Thomas v. City of*

*Philadelphia,* No. 21-CV-0441, 2021 WL 1614411, at *7 (E.D. Pa. Apr. 23, 2021) (denial of phone calls for a fifteen-day period does not violate the constitution especially absent any additional allegations about how that denial interfered with Thomas's ability to engage in constitutionally protected activity, including whom he sought to communicate with and whether other options were available for that communication).

To the extent that May asserts a First Amendment claim based on his inability to make telephone calls during some unspecified period while at GWHCF, such claim is also not plausible as pled. Although prisoners may have a limited First Amendment right to communicate with family and friends, *see Overton v. Bazzetta*, 539 U.S. 126, 131-32 (2003), "prisoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) (quoting *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)). "[A] prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (citing *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). Moreover, where there are alternative means of communicating with persons outside of the prison, such as in person visits or mail, the restrictions on telephone use is more likely to be considered reasonable. *See Almahdi*, 310 F. App'x at 522; *Ortiz-Medina v. Bradley*, No. 19-2133, 2020 WL 362697, at *5 (M.D. Pa. Jan. 22, 2020). May provides no factual allegations about whether he had alternate means of communicating with family and friends, and his allegations do not support a plausible inference that any limitations on phone use was not rational. Without additional information, I am unable to discern a plausible constitutional violation. *Accord Aruanno v. Johnson*, 568 F. App'x 194, 195 (3d Cir. 2014) (*per curiam*) (holding that conclusory allegations

"concerning [prisoner's] lack of phone access to friends and family" failed to state a claim). Accordingly, May's claims based on lost property and telephone usage will be dismissed.[6]

### IV. CONCLUSION

For the foregoing reasons, I will dismiss May's Amended Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B). May's excessive force claim against Defendant Gant passes statutory screening and will be served for responsive pleading. All other claims will be dismissed.

An appropriate Order follows.

---

[6] May also appears to complain that his grievances were ignored on multiple occasions. Because "prison inmates do not have a constitutionally protected right to a grievance process," any allegation that Defendants denied May access to that process cannot give rise to a claim under § 1983. *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam* ) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))); *Roman v. Cnty. of Chester, et al.*, No. 23-1662, 2023 WL 3868371, at *3 (E.D. Pa. June 7, 2023) (citations omitted).